# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 08-CV-80811-MARRA/JOHNSON

C.M. A.,

        Plaintiff,

v.

JEFFREY EPSTEIN and SARAH
KELLEN,

        Defendants,

_____/

## Defendant, Jeffrey Epstein's Motion To Stay And Or Continue Action For Time Certain Based On Parallel Civil And Criminal Proceedings With Incorporated Memorandum Of Law

Defendant, JEFFREY EPSTEIN, (hereinafter "EPSTEIN") by and through his undersigned attorneys, hereby moves this Court for the entry of an order staying or continuing this action for a time certain (i.e., until late 2010 when the NPA expires), pursuant to the application of the Fifth Amendment of the U.S. Constitution and the fact that a parallel proceeding is ongoing and being investigated. In support of his motion, EPSTEIN states:

### I.      Introduction

At the outset, EPSTEIN notes this Court's prior Order, dated December 16, 2008, (Document 28), in which this Court denied a motion for stay brought by Defendant's prior counsel. In that instance, Defendant's counsel requested a mandatory stay under 18 U.S.C.A. §3509(k) which the court denied. In denying the request for the stay, this Court stated that a discretionary stay was not appropriate at the time the order was entered but also stated, in part, that "Any such issues shall be resolved as they arise in the course of litigation.". As discussed herein, "special circumstances" now exist which, in the "interests of justice," merit the entry of a stay of this civil action until the criminal matter in the 15th Judicial Circuit is "closed" in

C.M.A. v. Epstein, et al.
Page 2

accordance with the United States Attorney's Office ("USAO") Non-Prosecution Agreement

("NPA") and until the NPA expires.

Moreover, EPSTEIN was indicted by a grand jury in or around July 2006. See **Exhibit**

**"A"**. The Non-Prosecution Agreement is part of the record in connection with that indictment,

which is signed by the State Attorney of the 15th Judicial Circuit in and for Palm Beach County,

Florida ("SAO"). In fact, the NPA acknowledges the investigation performed by the SAO.

Further, the USAO was present at the Plea hearing whereby the NPA was made part of the

record. Thus, there is no question that a parallel criminal matter exists in that the SAO's case

remains open and the NPA lives along side it, which places EPSTEIN under great scrutiny by the

USAO. The NPA actually places an affirmative duty upon EPSTEIN to undertake discussions

with the SAO to ensure compliance with the NPA. That check and balance, therefore, remains in

the hands of the SAO, which has a parallel criminal proceeding. Here, the threat of prosecution

is real, substantial, and present should the USAO determine that EPSTEIN somehow violated the

NPA. As discussed below, because the NPA fails to define what constitutes a breach, the USAO

has apparently taken it upon itself to determine whether a breach has occurred and whether to

seek criminal prosecution. In fact, the USAO has already attempted to claim violations of the

NPA due to, among other things, EPSTEIN defending the civil actions against him. Clearly, it is

NOT simply EPSTEIN's choice as to whether he violates the NPA – that discretion apparently

lies with the USAO. For this reason alone, a stay is required until the NPA expires.

The difference between this Motion and the prior motion to stay is solely due to the

ripeness of the issues discussed herein.

## II.    THE NPA

By its terms, the NPA took effect on June 30, 2008 and expires by those same terms in late 2010 so long as EPSTEIN complies with the terms and conditions – violations of which remain undefined.  The NPA, which remains under seal, outlines various obligations on the part of EPSTEIN including, but not limited to, pleading guilty to the Indictment and Information before the 15th Judicial Circuit, recommendations for his sentencing before the 15th Judicial Circuit, waiver of challenges to the Information filed by the SAO, waiver of right to appeal his conviction, agreement not be afforded benefits for gain time, and the agreement to not prosecute others listed thereon so long as EPSTEIN does not breach and fulfills the requirements of the NPA.

What the NPA does not outline or define is what constitutes a breach or what act or omission constitutes a breach thereof.  Therefore, the USAO apparently believes it has the discretion to make that unwritten and undefined determination, which places an unreasonable burden upon EPSTEIN in defending the civil claims in that he has no idea what the USAO will define as a breach in the event he does not assert his 5th Amendment Rights.  As an example, the USAO has already claimed that EPSTEIN violated the NPA by:

1.    investigating the Plaintiffs (by and though his attorneys) whom brought civil suits against him for purposes of defending those civil actions;

2.    contesting damages in this action and in the other civil actions;

3.    making statements to the press about this Plaintiff or other Plaintiffs by and though his attorneys; and

C.M.A. v. Epstein, et al.
Page 4

      4.     using the word "jail" instead of "imprisonment" in the plea agreement with SA's office.

      See **Exhibit "B"** Goldberger Affidavit - EPSTEIN's criminal counsel.

      These allegations are silly, unfounded and alleged violations which are <u>not</u> defined as violations under the NPA but arrived at by the USAO. Thus, EPSTEIN is left with "Morton's Fork" in his side - the undesirable choice of taking the 5th Amendment and having a judgment (summary or otherwise) entered against him in the civil action or the undesirable choice of subjecting himself to discovery in the civil action <u>before the NPA expires</u> and, thus, face the possibility of criminal prosecution by the USAO based upon some illusory breach deemed by the USAO by way of information obtained through civil discovery proceedings. This is inherently unfair, the danger is clear, and the playing field is not level in light of the NPA language or lack thereof.

      As a result, the threat of criminal prosecution against EPSTEIN by the USAO continues presently and through late 2010.

### III.   Justice Requires The Entry of A Stay Because Defendant Is Being Forced To Choose Between Waiving His 5th Amendment Privilege Or Risk Losing This Civil Case And Forfeiting Other Constitutional Guarantees Of Due Process And Effective Assistance Of Counsel

      Once the NPA expires, EPSTEIN fully intends to testify to all relevant and non-objectionable inquiries made to him in discovery be it a deposition, in interrogatories or in production requests. (Emphasis Added) However, the current circumstances are such that by testifying or responding to discovery, EPSTEIN will be required to waive his constitutional privileges, thereby subjecting himself to criminal prosecution and scrutiny by the USAO as a

4

C.M.A. v. Epstein, et al.
Page 5

result of matters alleged in this civil action (and others before this Court and in the State of

Florida 15th Judicial Circuit Court, Palm Beach County).

The special circumstances of this action are such that a stay or continuance for a time

certain is NOT prejudicial and is required to be entered so that:

(1) EPSTEIN is not required to waive his Fifth Amendment right against self-

incrimination under the United States Constitution resulting in severe prejudice to EPSTEIN in

pending criminal matters; and

(2) EPSTEIN is not forced to choose between waiving his Fifth Amendment right against

self-incrimination or losing the civil case.

Here, in asserting his Fifth Amendment Privilege, the Plaintiff is afforded an opportunity

rarely given - that is, to put on only her evidence without any counterevidence from Defendant

resulting in a judgment of liability against EPSTEIN. This is inherently unfair and precisely the

special circumstances where "in the interests of justice" a stay is required. Ventura v. Brosky,

2006 WL 3392207 (S.D. Fla. 2006), citing, United States v. Lot 5, Fox Grove, 23 F.3d 359 (11th

Cir. 1994). In Ventura, a stay was entered where a Defendant was confronted with issue of

waiving his 5th Amendment Privilege or to loose a civil case by way of motion for summary

judgment. Id. Here, EPSTEIN is not requesting a mandatory stay. EPSTEIN only asks that this

court recognize that "special circumstances" exists in this matter and enter a stay in the "interests

of justice" and only for a specified period of time (i.e., after the NPA expires). See also

Securities and Exchange Commission, 755 F.Supp. 1018, 1019 (S.D. Fla. 1990)(Defendant was

in precarious position while being subject to criminal investigation and reasoning that

compelling Defendant to speak by ordering an accounting of alleged illicit funds would directly

5

C.M.A. v. Epstein, et al.
Page 6

impinge his right against self-incrimination).  The court found it appropriate to grant the request

for stay. (Emphasis Added).

Citing to <u>U.S. v. Lot 5, Fox Grove</u>, *supra*, the Southern District Court, Florida, in

<u>Ventura v. Brosky</u>, 2006 WL 3392207 (S.D. Fla. 2006), stated –

> The Eleventh Circuit has also created a test for these circumstances, stating that
> where there exists a concurrent civil and criminal proceeding, **a court must stay
> a civil proceeding pending resolution of a related criminal prosecution when
> "special circumstances" so require in the "interests of justice."**

(Bold emphasis added).  <u>See also</u> <u>United States v. Kordel</u>, 397 U.S. 1, 12 & n. 27, 90 S.Ct. 763,

769-70 & n.27 (1970).  The <u>Ventura</u> Court went on to state that "situations where a defendant in

both criminal and civil proceedings must choose whether to waive his privilege against self-

incrimination or to lose the civil case in summary or default judgment proceedings have met this

test's burden and warrant a stay." <u>Id</u>.  The <u>Ventura</u> court granted the stay.  Here, the 15[th] Judicial

Circuit action lives along with the NPA.

In making a decision to enter such a stay, the court may consider the following factors:

(1)     the interests of the Plaintiffs in proceeding expeditiously with litigation, or any

aspect of it, and the potential prejudice of Plaintiff to the delay;

(2)     the burden which any particular aspect of the proceedings may impose on the

defendant;

(3)     the convenience of the court in the management of its cases, and the efficient use

of judicial resources;

(4)     the interests of persons not parties to the civil litigation; and

(5)     the interest of the public in the pending civil and criminal litigation.

6

C.M.A. v. Epstein, et al.
Page 7

See U.S. v. Pinnacle Quest International, 2008 WL 4274498 (N.D. Fla. 2008).

First, in applying the above factors, the Plaintiff in the instant matter will not be prejudiced simply by claiming a delay in time. Second, the burden is far greater on the EPSTEIN if he is forced to waive his 5th Amendment Privilege or remain silent and have a judgment entered against him or choose to testify and face criminal prosecution. Third, efficient use of judicial resources would be rendered upon a stay by way of preventing an appeal if such a stay is not entered. The Court has broad discretion to enter such a stay. Fourth, the interests of the individuals outlined in the NPA will be served because EPSTEIN's fulfillment of NPA alleged obligations is determinative upon whether the USAO prosecutes those individuals or whether the claims will be dropped upon the expiration of the NPA. Finally, the interest of the public in the pending civil and criminal cases will not be prejudiced as EPSTEIN is already serving his term whereby a plea was entered in the 15 Judicial Circuit action.

### a. Application of the 5th Amendment

Next, the Fifth Amendment privilege against self-incrimination "permits a person not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Edwin v. Price, 778 F.2d 668, 669 (11th Cir. 1985), *citing* Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.C. 316, 322 (1973). See also Ohio v. Reiner, 532 U.S. 17, 21, 121 S.Ct. 1252 (2001)(The Fifth Amendment privilege is also available to those who claim innocence. One of the Fifth Amendment's "basic functions ... is to protect innocent men ... 'who otherwise might be ensnared by ambiguous circumstances."); Malloy v. Hogan, 84 S.Ct. 1489, 1495 (1964)(the Fifth Amendment's Self-Incrimination Clause applies to the states through the Due Process

7

C.M.A. v. Epstein, et al.
Page 8

Clause of the Fourteenth Amendment - "[i]t would be incongruous to have different standards determine the validity of a claim of privilege based on the same feared prosecution, depending on whether the claim was asserted in state or federal court."); Kastigar v. U.S., 406 U.S. 441, 444-45, 92 S.Ct. 1653 (1972)(The Fifth Amendment privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. This Court has been zealous to safeguard the values which underlie the privilege." (Emphasis added)).

The United States Supreme Court made it clear that the scope of the Fifth Amendment Privilege includes the circumstances as here "the act of producing documents in response to a subpoena (or production request) has a compelled testimonial aspect." United States v. Hubbell, 530 U.S. 27, 36, 120 S.Ct. 2037, 2043 (2000); see also Fisher v. United States, 425 U.S. 391 (1976); McCormick on Evidence, Title 6, Chap. 13. The Privilege Against Self-Incrimination, §138 (6th Ed.). The privilege against self-incrimination may be asserted during discovery when a litigant has "reasonable grounds to believe that the response would furnish a link in the chain of evidence needed to prove a crime against a litigant." A witness, including a civil defendant, is entitled to invoke the Fifth Amendment privilege whenever there is a realistic possibility that the answer to a question could be used in anyway to convict the witness of a crime or could aid in the development of other incriminating evidence that can be used at trial. Id; Pillsbury Company v. Conboy, 495 U.S. 248, 103 S.Ct. 608 (1983).

Certainly, if the USAO decides to prosecute EPSTEIN for an alleged violation of the NPA, it would undoubtedly be able to use information obtained during discovery against him or

8

C.M.A. v. Epstein, et al.
Page 9

use that information to aid in the development of other evidence against him at a criminal trial. The USAO is already claiming violations of the NPA based upon EPSTEIN defending the civil actions and, at the same time, while EPSTEIN asserts the 5th Amendment. Imagine, because that is all we can do based on the lack of wording in the NPA, what violations the USAO will assert if EPSTEIN is forced to waive his 5th Amendment privilege to defend himself in this and the other civil actions.

The Fifth Amendment provides, in relevant part, that "No person ... shall be compelled in any Criminal Case to be a witness against himself." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814 (1951), *citing* Feldman v. United States, 1944, 322 U.S. 487, 489, 64 S.Ct. 1082, 1083, 88 L.Ed. 1408." The Fifth Amendment's privilege against self-incrimination is "accorded liberal construction in favor of the right it was intended to secure." "The immediate and potential evils of compulsory self-disclosure transcend any difficulties that the exercise of the privilege may impose on society in the detection and prosecution of a crime." Id., at 490; and In re Keller Financial Svcs. of Fla., Inc., 259 B.R. 391, 399 (M.D. Fla. 2000). The privilege not only extends to answers that would in themselves support a conviction under a criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a crime. Id, *citing* Blau v. United States, 1950, 340 U.S. 159, 71 S.Ct. 223. The Fifth Amendment privilege against self-incrimination "permits a person not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Edwin v. Price, 778 F.2d at 669, citing Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S.C. 316, 322 (1973). As EPSTEIN is here, "the claimant must be 'confronted by substantial and 'real,' and not merely

9

C.M.A. v. Epstein, et al.
Page 10

trifling or imaginary, hazards of incrimination.'" See generally, United States v. Apfelbaum, 445

U.S. 115, 128, 100 S.Ct. 948, 956, 63 L.Ed.2d 250 (1980)). See also, United States v. Neff, 615

F.2d 1235, 1239 (9th Cir.), cert. denied, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117

(1980)(Information is protected by the privilege not only if it would support a criminal

conviction, but even if "the responses would merely 'provide a lead or clue' to evidence having a

tendency to incriminate."). EPSTEIN falls under each of the above category of cases.

The United States Supreme Court has made clear that the scope of the Fifth Amendment

Privilege also encompasses the circumstance where "the act of producing documents in response

to a subpoena (or production request) has a compelled testimonial aspect." United States v.

Hubbell, 530 U.S. 27, 36, 120 S.Ct. 2037, 2043 (2000); see also Fisher v. United States, 425 U.S.

391 (1976). In explaining the application of the privilege, the Supreme Court stated:

> We have held that "the act of production" itself may implicitly communicate
> "statements of fact." By "producing documents in compliance with a subpoena,
> the witness would admit that the papers existed, were in his possession or control,
> and were authentic." Moreover, as was true in this case, when the custodian of
> documents responds to a subpoena, he may be compelled to take the witness stand
> and answer questions designed to determine whether he has produced everything
> demanded by the subpoena. The answers to those questions, as well as the act of
> production itself, may certainly communicate information about the existence,
> custody, and authenticity of the documents. Whether the constitutional privilege
> protects the answers to such questions, or protects the act of production itself, is a
> question that is distinct from the question whether the unprotected contents of the
> documents themselves are incriminating.
>
> "The issue presented in those cases was whether the act of producing subpoenaed
> documents, not itself the making of a statement, might nonetheless have some
> protected testimonial aspects. The Court concluded that the act of production could
> constitute protected testimonial communication because it might entail implicit
> statements of fact: by producing documents in compliance with a subpoena, the
> witness would admit that the papers existed, were in his possession or control, and
> were authentic. United States v. Doe, 465 U.S., at 613, and n. 11, 104 S.Ct. 1237;
> Fisher, 425 U.S., at 409-410, 96 S.Ct. 1569; id., at 428, 432, 96 S.Ct. 1569

C.M.A. v. Epstein, et al.
Page 11

(concurring opinions). See *Braswell v. United States,* [487 U.S.,] at 104, 108 S.Ct. 2284; [ *id.*,] at 122, 108 S.Ct. 2284 (dissenting opinion). Thus, the Court made clear that the Fifth Amendment privilege against self-incrimination applies to acts that imply assertions of fact."... An examination of the Court's application of these principles in other cases indicates the Court's recognition that, in order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a 'witness' against himself." *Doe v. United States,* 487 U.S., at 209-210, 108 S.Ct. 2341 (footnote omitted).

Finally, the phrase "in any criminal case" in the text of the Fifth Amendment might have been read to limit its coverage to compelled testimony that is used against the defendant in the trial itself. It has, however, long been settled that its protection encompasses compelled statements that lead to the discovery of incriminating evidence even though the statements themselves are not incriminating and are not introduced into evidence. Thus, a half century ago we held that a trial judge had erroneously rejected a defendant's claim of privilege on the ground that his answer to the pending question would not itself constitute evidence of the charged offense. As we explained:

"The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

Compelled testimony that communicates information that may "lead to incriminating evidence" is privileged even if the information itself is not inculpatory. *Doe v. United States,* 487 U.S. 201, 208, n. 6, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). It's the Fifth Amendment's protection against the prosecutor's use of incriminating information derived directly or indirectly from the compelled testimony of the respondent that is of primary relevance in this case.

The privilege against self-incrimination may be asserted during discovery when a litigant has "reasonable grounds to believe that the response would furnish a link in the chain of evidence needed to prove a crime against a litigant." A witness, including a civil defendant, is entitled to invoke the Fifth Amendment privilege whenever there is a realistic possibility that the answer to a question could be used in anyway to convict the witness of a crime or could aid in

C.M.A. v. Epstein, et al.
Page 12

the development of other incriminating evidence that can be used at trial. Id; Pillsbury Company

v. Conboy, 495 U.S. 248, 103 S.Ct. 608 (1983). See also, Hubbell, supra, as to what is

encompassed by the phrase "in any criminal case" contained in the Fifth Amendment.

As noted, the Fifth Amendment privilege against self-incrimination is broad. Hoffman;

In re Keller Financial Svcs., *supra*. To deny a witness the right to invoke the privilege, the judge

must be perfectly clear, from a careful consideration of all the circumstances in the case, that the

witness is mistaken, and that the answers cannot possibly have such tendency to incriminate. Id,

at 488, 399. Recognizing the breadth and magnitude of this constitutional privilege, the United

States Supreme Court in discussing how a court is to analyze the application of the privilege

stated –

> … It is for the court to say whether his silence is justified, Rogers v. United States,
> 1951, 340 U.S. 367, 71 S.Ct. 438, and to require him to answer if 'it clearly appears
> to the court that he is mistaken.' Temple v. Commonwealth, 1880, 75 Va. 892, 899.
> However, if the witness, upon interposing his claim, were required to prove the
> hazard in the sense in which a claim is usually required to be established in court, he
> would be compelled to surrender the very protection which the privilege is designed
> to guarantee. To sustain the privilege, it need only be evident from the implications
> of the question, in the setting in which it is asked, that a responsive answer to the
> question or an explanation of why it cannot be answered might be dangerous because
> injurious disclosure could result. The trial judge in appraising the claim 'must be
> governed as much by his personal perception of the peculiarities of the case as by the
> facts actually in evidence.'

Hoffman, supra at 486-487.

Hoffman and its progeny establish that "in view of the liberal construction of the

provision [protecting against self-incrimination], after a witness has asserted the privilege, he

should be compelled to provide the requested information only if it "clearly appears" to the court

12

C.M.A. v. Epstein, et al.
Page 13

that the witness was mistaken in his invocation of the privilege." (Emphasis added). In re Keller

Financial Svcs., *supra* at 399, *citing* Hoffman, at 486.

In the instant case, the privilege applies as Defendant EPSTEIN "has reasonable cause to

apprehend danger from a direct answer." The risk of incrimination resulting from being subject

to discovery or to testify in his own defense while the NPA exists is "substantial and real" and

"not trifling or imaginary haphazards of communication." See generally, In re Keller Financial

Svcs., *supra* at 400. Based on the nature of Plaintiff's claims, along with the ongoing scrutiny

of the USAO in the criminal matters, EPSTEIN has "reasonable grounds to believe that his

responses to the discovery would furnish a link in the chain of evidence needed to prove a crime

against him. Finally, in order to preserve the privilege, the privilege must be asserted or one

risks the loss or waiver of this liberty ensuring protection. See *generally*, U.S. v. White, 846

F.2d 678, 690 (11th Cir. 1988)("First, it ignores the settled principle which requires a witness to

assert his Fifth Amendment rights. A witness who testifies at any proceeding, instead of asserting

his Fifth Amendment rights, loses the privilege. ... A civil deponent cannot choose to answer

questions with the expectation of later asserting the Fifth Amendment.").

Also applicable in upholding the assertion of the Fifth Amendment privilege is the

guarantee of effective assistance of counsel by the Sixth Amendment of the U.S. Constitution.

See Yarborough v. Gentry, 124 S.Ct. 1, 540 U.S. 1, 157 L.Ed.2d 1 (2003)(Sixth Amendment

guarantees criminal defendants effective assistance of counsel.), on remand 381 F.3d 1219. The

United States Constitutional guarantees are applicable to the states through the Fourteenth

Amendment. Obviously, EPSTEIN's assertion of his constitutional privileges and protections is

on the advice of counsel. Again, EPSTEIN continues to face criminal prosecution by the USAO

13

C.M.A. v. Epstein, et al.
Page 14

until the expiration of the NPA; under the constitutional guarantee of effective assistance of counsel, he is entitled to follow the recommended advice of his criminal defense attorney. See Goldberger Affidavit attached hereto.

EPSTEIN's invocation of his constitutional protections of the Fifth, Sixth and Fourteenth Amendments must be upheld for the reasons set forth herein; otherwise such constitutional protections would be rendered meaningless. Already and recently, Defendant EPSTEIN in his Response and Objections to discovery, attached hereto as **Exhibit "C"**, has been required to assert, on advice of counsel, his Fifth Amendment privilege against self-incrimination, along with his constitutional rights afforded under the Sixth and Fourteenth Amendments of the United States Constitution. Thus, EPSTEIN's entitlement to a stay is ripe for determination.

Based upon the foregoing, a stay is warranted in this action as the Defendant is being forced to choose between the assertion of his Fifth Amendment right or losing this case by judgment (summary or otherwise) or waiver of his 5th Amendment right and face potential criminal prosecution.

By: _____
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No. 224162
rcrit@bclclaw.com
MICHAEL J. PIKE, ESQ.
Florida Bar #617296

### Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this

14

C.M.A. v. Epstein, et al.
Page 15

day on all counsel of record identified on the following  Service List in the manner specified by

CM/ECF on this __24th__ day of __March__ , 2009

Richard Horace Willits, Esq.
Richard H. Willits, P.A.
2290 10th Avenue North
Suite 404
Lake Worth, FL 33461
561-582-7600
Fax: 561-588-8819
*Counsel for Plaintiff C.M.A.*
reelrhw@hotmail.com

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
Fax: 561-835-8691
jagesq@bellsouth.net
*Counsel for Defendant Jeffrey Epstein*

Jack Scarola, Esq.
Jack P. Hill, Esq.
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300
Fax: 561-383-9424
jsx@searcylaw.com
jph@searcylaw.com
*Co-Counsel for Plaintiff*

Bruce Reinhart, Esq.
Bruce E. Reinhart, P.A.
250 S. Australian Avenue
Suite 1400
West Palm Beach, FL 33401
561-202-6360
Fax:  561-828-0983
ecf@brucereinhartlaw.com
*Counsel for Defendant Sarah Kellen*

Respectfully submitted,

By:
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No.  224162
rcrit@bclclaw.com
MICHAEL J. PIKE, ESQ.
Florida Bar #617296
mpike@bclclaw.com
BURMAN, CRITTON, LUTTIER & COLEMAN
515 N. Flagler Drive, Suite 400
West Palm Beach, FL 33401
561/842-2820 Phone
561/515-3148 Fax
(Counsel for Defendant, Jeffrey Epstein)

15

# INDICTMENT

A TRUE BILL  *06-9454 CF*
*An2*

## IN THE NAME OF AND BY THE AUTHORITY OF THE STATE OF FLORIDA

### IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL
### CIRCUIT OF THE STATE OF FLORIDA

For Palm Beach County, at the Spring Term thereof, in the year of our Lord Two Thousand and Six, to-wit:

The Grand Jurors of the State of Florida, inquiring in and for the body of said County of Palm Beach, upon their

oaths do present that JEFFREY E. EPSTEIN in the County of Palm Beach aforesaid, in the Circuit and State

aforesaid,

## COUNT ONE
## FELONY SOLICITATION OF PROSTITUTION

on or about or between the 1st day of August in the year of our Lord Two Thousand and Four and October 31,

2005, did solicit, induce, entice, or procure another to commit prostitution lewdness, or assignation, contrary to

Florida Statute 796.07(1) on three or more occasions between August 01, 2004 and October 31, 2005,

contrary to Florida Statute 796.07(2)(f) and (4)(c). (3 DEG FEL)(LEVEL 1)

against the form of the statute, to the evil example of all others, and against the peace and dignity of the State

of Florida.

I hereby certify that I have advised the Grand Jury returning this indictment as authorized and required by law.

_____
Assistant State Attorney of the
Fifteenth Judicial Circuit of the State
of Florida, prosecuting for the said
State

_____
GRAND JURY FOREPERSON

_____
DATE

EXHIBIT "A"

Jeffrey E. Epstein, Race: White, Sex: Male, DOB: January 20, 1953, SS#: 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; Issue Warrant

## AFFIDAVIT OF JACK A. GOLDBERGER, ESQUIRE

STATE OF FLORIDA          ) SS
COUNTY OF PALM BEACH      )

BEFORE ME, the undersigned authority, personally appeared having personal knowledge and being duly sworn, deposes and says:

1.    I, **Jack A. Goldberger**, have personal knowledge of the matters set forth herein. I am an attorney licensed to practice in the State of Florida since 1978. I am a partner with the law firm of Atterbury Goldberger & Weiss, P.A., located at One Clearlake Centre, Suite 1400, 250 Australian Avenue South, West Palm Beach, FL 33401.

2.    My practice includes and specializes in the defense of criminal matters. I am board certified in criminal law. I have been and currently am the criminal defense attorney for JEFFREY EPSTEIN.

3.    I represented Mr. EPSTEIN in the negotiation of and entering into a Non-Prosecution Agreement with the United States Attorney's Office (USAO) for the Federal Southern District of Florida. The terms and conditions of the Non-Prosecution Agreement also entailed the entering of a Plea Agreement with the State Attorney's Office, Palm Beach County, State of Florida. (The Non-Prosecution Agreement shall hereinafter be referred to as the "NPA").

4.    By its terms, the NPA took effect on June 30, 2008. Also, pursuant to the terms of the NPA, any criminal prosecution against EPSTEIN is deferred as long as the terms and conditions of the NPA are fulfilled by EPSTEIN.

EXHIBIT 

5.    The criminal matters against EPSTEIN remain ongoing until the NPA expires by its terms in late 2010, <u>and</u> as long as the USAO determines EPSTEIN has complied with those terms and conditions. The threat of criminal prosecution against EPSTEIN by USAO in the Southern District of Florida continues presently and through late 2010.

6.    Pursuant to the terms of the NPA, the USAO possesses the right to declare that the agreement has been breached, give EPSTEIN's counsel notice, and attempt to move forward with a prosecution. As of the date of this Affidavit, the USAO has taken the position on a number of occasions that it might consider the following actions by EPSTEIN to be a breach of the NPA.

- Investigation by EPSTEIN (by and through his attorneys) of this Plaintiff and the other Plaintiffs in other pending civil cases for purposes of defending the civil actions;

- EPSTEIN's contesting damages in this action and other civil actions.

- EPSTEIN or his legal representatives making statements to the press about this Plaintiff or the other Plaintiffs.

- Using the word "jail" instead of "imprisonment" in the plea agreement with the Palm Beach County State Attorney's Office.

7.    EPSTEIN, through counsel, submitted a Freedom of Information Act request to the Federal Bureau of Investigation (FBI) for documents relating to this and the other cases; the FBI denied the request stating  the materials are at this time exempt from disclosure because they are in an investigative file, i.e. the matter is still an ongoing criminal investigation.

8.      The NPA expires in late 2010.


FURTHER THE AFFIANT SAYETH NAUGHT.

_____
Jack A. Goldberger, Esq.


STATE OF FLORIDA
COUNTY OF PALM BEACH

      I hereby Certify that on this day, before me, an officer duly authorized to administer oaths and take acknowledgments, personally appeared Jack A. Goldberger, Esquire, known to me to be the person described in and who executed the foregoing Affidavit, who acknowledged before me that he/she executed the same, that I relied upon the following form of identification of the above named person: _Known Personally_____, and that an oath was/was not taken.


      WITNESS my hand and official seal in the County and State last aforesaid this __19th__ day of __February____, 2009.

Notary Public State of Florida
Kim E Rosin
My Commission DD489790
Expires 11/13/2009

(SEAL)

PRINT NAME: __Kim E Rosin__
NOTARY PUBLIC/STATE OF FLORIDA
COMMISSION NO.: DD 489790
MY COMMISSION EXPIRES: 11/13/2009



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 08-CV-80811-MARRA/JOHNSON

C.M. A.,

    Plaintiff,

v.

JEFFREY EPSTEIN and SARAH
KELLEN,

    Defendants,

_____/

## DEFENDANT JEFFREY EPSTEIN'S RESPONSE & OBJECTIONS
## TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Defendant, JEFFREY EPSTEIN, by and through his undersigned attorneys, hereby responds to Plaintiff's First Request For Production To Defendant, served January 8, 2009 and states:

**Request No. 1:**  Any and all evidence required to be maintained by Epstein and the United States Attorney for the Southern District of Florida, specifically evidence requested by or directly related to the grand jury subpoenas that have been issued in connection with the investigation referenced in the Non-Prosecution Agreement, and including certain computer equipment.

**Response:**  Defendant is asserting specific legal objections to the production request as well as his U.S. constitutional privileges. I intend to produce all relevant documents regarding this lawsuit, however, my attorneys have counseled me that at the present time I cannot select, authenticate, and produce documents relevant to this

EXHIBIT "_C_"

C.M.A. v. Epstein, et al.
Page 2

lawsuit and I must accept this advice or risk losing my Sixth Amendment right to effective representation. Accordingly, I assert my federal constitutional rights under the Fifth, Sixth, and Fourteenth Amendments as guaranteed by the United States Constitution. Drawing an adverse inference under these circumstances would unconstitutionally burden my exercise of my constitutional rights, would be unreasonable, and would therefore violate the Constitution. In addition to and without waiving his constitutional privileges, the information sought is privileged and confidential, and inadmissible pursuant to the terms of the deferred prosecution agreement, Fed. Rule of Evidence 410 and 408, and §90.410, Fla. Stat. Further, the request may include information subject to work product or an attorney-client privilege.

**Request No. 2:** Any and all documents reflecting or relating to the identity of, the scheduling of, and/or the payment of any female compensated by or on behalf of Epstein for providing any service to Epstein that required, contemplated, or included in the provisions of such service, any physical contact between Epstein and the female, any act or prostitution, any illicit sexual conduct, the exposure of breast, buttocks or genitalia, or any commercial sex act as defined in 18 U.S.C. §1591(c)(1).

**Response:** Defendant is asserting specific legal objections to the production request as well as his U.S. constitutional privileges. I intend to produce all relevant documents regarding this lawsuit, however, my attorneys have counseled me that at the present time I cannot select, authenticate, and produce documents relevant to this lawsuit and I must accept this advice or risk losing my Sixth Amendment right to effective representation. Accordingly, I assert my federal constitutional rights under the

C.M.A. v. Epstein, et al.
Page 3

Fifth, Sixth, and Fourteenth Amendments as guaranteed by the United States Constitution. Drawing an adverse inference under these circumstances would unconstitutionally burden my exercise of my constitutional rights, would be unreasonable, and would therefore violate the Constitution. In addition to and without waiving his constitutional privileges, the information sought is privileged and confidential, and inadmissible pursuant to the terms of the deferred prosecution agreement, Fed. Rule of Evidence 410 and 408, and §90.410, Fla. Stat. Further Defendants objects to the production as overly broad and seeking information that is neither relevant to the subject matter of the pending action nor does it appear to be reasonably calculated to lead to the discovery of admissible evidence. The Plaintiff in this instance has alleged in her complaint that she was sexually abused by the Defendant on one occasion sometime in the year 2004. The documents requested herein have no time period provided, and therefore the information sought is grossly overbroad.

**Request No. 3:** Any and all documents reflecting or relating to the identity of and/or the nature and extent of any other person's participation in the communication with and/or the scheduling of and/or the payment of any person who participated in any conduct described in Request #2.

**Response:** Defendant is asserting specific legal objections to the production request as well as his U.S. constitutional privileges. I intend to produce all relevant documents regarding this lawsuit, however, my attorneys have counseled me that at the present time I cannot select, authenticate, and produce documents relevant to this

C.M.A. v. Epstein, et al.
Page 4

lawsuit and I must accept this advice or risk losing my Sixth Amendment right to effective representation. Accordingly, I assert my federal constitutional rights under the Fifth, Sixth, and Fourteenth Amendments as guaranteed by the United States Constitution. Drawing an adverse inference under these circumstances would unconstitutionally burden my exercise of my constitutional rights, would be unreasonable, and would therefore violate the Constitution. In addition to and without waiving his constitutional privileges, the information sought is privileged and confidential, and inadmissible pursuant to the terms of the deferred prosecution agreement, Fed. Rule of Evidence 410 and 408, and §90.410, Fla. Stat. Further Defendants objects to the production as overly broad and seeking information that is neither relevant to the subject matter of the pending action nor does it appear to be reasonably calculated to lead to the discovery of admissible evidence. The Plaintiff in this instance has alleged in her complaint that she was sexually abused by the Defendant on one occasion sometime in the year 2004. The documents requested herein have no time period provided, and therefore the information sought is grossly overbroad.

## Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was sent by U.S. mail to the following addressees, on this __6th__ day of __February__ , 2009

Richard Horace Willits, Esq.
Richard H. Willits, P.A.
2290 10th Avenue North
Suite 404
Lake Worth, FL 33461
561-582-7600

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300

C.M.A. v. Epstein, et al.
Page 5

Fax: 561-588-8819
*Counsel for Plaintiff C.M.A.*
reelrhw@hotmail.com

Jack Scarola, Esq.
Jack P. Hill, Esq.
Searcy Denney Scarola Barnhart &
Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300
Fax: 561-383-9424
jsx@searcylaw.com
jph@searcylaw.com
*Co-Counsel for Plaintiff*

Fax: 561-835-8691
jagesq@bellsouth.net
*Counsel for Defendants Jeffrey Epstein and Sarah Kellen*

Bruce Reinhart, Esq.
Bruce E. Reinhart, P.A.
250 S. Australian Avenue
Suite 1400
West Palm Beach, FL 33401
561-202-6360
Fax: 561-828-0983
ecf@brucereinhartlaw.com
*Counsel for Defendant Sarah Kellen*

Respectfully submitted,

By: _____
ROBERT D. CRITTON, JR., ESQ.
Florida Bar No. 224162
rcrit@bclclaw.com
MICHAEL J. PIKE, ESQ.
Florida Bar #617296
mpike@bclclaw.com
BURMAN, CRITTON, LUTTIER & COLEMAN
515 N. Flagler Drive, Suite 400
West Palm Beach, FL 33401
561/842-2820 Phone
561/515-3148 Fax
(*Counsel for Defendant Jeffrey Epstein*)