UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-CIV-80119-MARRA/JOHNSON

JANE DOE NO. 2,

      Plaintiff,

vs.

JEFFREY EPSTEIN,

      Defendant.

_____/

Related cases:
08-80232, 08-08380, 08-80381, 08-80994,
08-80993, 08-80811, 08-80893, 09-80469,
09-80591, 09-80656, 09-80802, 09-81092

_____/

### THIRD PARTY WITNESS, IGOR ZINOVIEW'S, MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Third Party Witness, Igor Zinoview's, ("Mr. Zinoview") by and through his undersigned attorney, moves this Court pursuant to Fed. R. Civ. P. 26(c) for a protective order regarding his deposition and as grounds therefore would state:

    1.     As reflected on the affidavit of Igor Zinoview, attached as **Exhibit A**, he works for Defendant, Jeffrey Epstein ("Mr. Epstein") as a driver and bodyguard. He did not know Mr. Epstein before November of 2005. He first became employed by Mr. Epstein in November of 2005.

    2.     Additionally, Mr. Zinoview would testify as set forth on his affidavit, that at no time has he discussed with Mr. Epstein any issues involving Mr. Epstein's criminal case nor any of the cases or issues involved with civil plaintiffs.

1

3.     In many of the depositions, counsel for L.M. and E.W., has asked them as witnesses to assume certain facts about which they have no knowledge, and he then asks their opinions about certain facts. See **Exhibit B** -Epstein's Motion for Protective Order to Prohibit Inappropriate Deposition Questions.

4.     There is no information which Mr. Zinoview has relating to the facts and circumstances surrounding any of the pending civil cases, in that none of their allegations directed to Mr. Epstein extend beyond September of 2005.   Therefore whatever information Mr. Zinoview may have, postdates that time.

5.     Regarding the scope of discovery, Judge Linnea Johnson noted in her October 28, 2009 Omnibus Order (DE #377), "[w]hile the scope of discovery is broad, it is not without limits.  Washington v. Brown & Williamson Tobacco, 959 F.2d 1566, 1570 (11th Cir. 1992). ...  Courts have long held that '[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in the shadow zones of relevancy and to explore matter (sic) which does not presently appear germane on the theory that it might conceivably become so.' Food Lion, Inc. v. United Food & Commercial Workers Intern. Union, 103 F.3d 1007, 1012-13 (C.A. D.C. 1997) (string cite omitted)."

6.     Rule 26(c), Federal Rules of Civil Procedure, provides that, "[a] party or any person from whomn discovery is sought may move for a protective order in the court where the action is pending....   The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery;"

7.    As set forth in his affidavit, Mr. Zinoview cannot possibly have any knowledge or information that is presently germane to this action.   Accordingly, the Court should enter a protective order prohibiting his deposition.

WHEREFORE, third-party witness moves this court for a protective order pursuant to Rule 26(c), Federal Rules of Civil Procedure, that his deposition not take place or the questioning be limited.

By: _____
JACK ALAN GOLDBERGER ESQ.
Florida Bar No.  262013
jagesq@bellsouth.net

### Rule 7.1 Certification

I hereby certify that counsel for the movant has conferred or attempted to confer with opposing counsel in a good faith effort to resolve the discovery issues prior to the filing of this motion for protective order but has been unable to do so.

### Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the following  Service List in the manner specified by CM/ECF on this ____ day of November, 2009

Respectfully submitted,

By: _____
JACK ALAN GOLDBERGER ESQ.
Florida Bar No.  262013
jagesq@bellsouth.net
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
Fax: 561-835-8691
(Counsel for Defendant Jeffrey Epstein)

**Certificate of Service**
**Jane Doe No. 2 v. Jeffrey Epstein**
**Case No. 08-CV-80119-MARRA/JOHNSON**

Stuart S. Mermelstein, Esq.
Adam D. Horowitz, Esq.
Mermelstein & Horowitz, P.A.
18205 Biscayne Boulevard
Suite 2218
Miami, FL 33160
305-931-2200
Fax: 305-931-0877
ssm@sexabuseattorney.com
ahorowitz@sexabuseattorney.com
*Counsel for Plaintiffs*
*In related Cases Nos. 08-80069, 08-80119,*
*08-80232, 08-80380, 08-80381, 08-80993,*
*08-80994*

Richard Horace Willits, Esq.
Richard H. Willits, P.A.
2290 10th Avenue North
Suite 404
Lake Worth, FL 33461
561-582-7600
Fax: 561-588-8819
*Counsel for Plaintiff in Related Case No.*
*08-80811*
reelrhw@hotmail.com

Jack Scarola, Esq.
Jack P. Hill, Esq.
Searcy Denney Scarola Barnhart & Shipley,
P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300
Fax: 561-383-9424
jsx@searcylaw.com
jph@searcylaw.com
*Counsel for Plaintiff, C.M.A.*

Bruce Reinhart, Esq.
Bruce E. Reinhart, P.A.
250 S. Australian Avenue
Suite 1400
West Palm Beach, FL 33401

Brad Edwards, Esq.
Rothstein Rosenfeldt Adler
401 East Las Olas Boulevard
Suite 1650
Fort Lauderdale, FL 33301
Phone: 954-522-3456
Fax: 954-527-8663
bedwards@rra-law.com
*Counsel for Plaintiff in Related Case No.*
*08-80893*

Paul G. Cassell, Esq.
*Pro Hac Vice*
332 South 1400 E, Room 101
Salt Lake City, UT 84112
801-585-5202
801-585-6833 Fax
cassellp@law.utah.edu
*Co-counsel for Plaintiff Jane Doe*

Isidro M. Garcia, Esq.
Garcia Law Firm, P.A.
224 Datura Street, Suite 900
West Palm Beach, FL 33401
561-832-7732
561-832-7137 F
isidrogarcia@bellsouth.net
*Counsel for Plaintiff in Related Case No.*
*08-80469*

Robert C. Josefsberg, Esq.
Katherine W. Ezell, Esq.
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
305 358-2800
Fax: 305 358-2382
rjosefsberg@podhurst.com
kezell@podhurst.com
*Counsel for Plaintiffs in Related Cases*
*Nos. 09-80591 and 09-80656*

Jack Alan Goldberger, Esq.

561-202-6360
Fax:  561-828-0983
ecf@brucereinhartlaw.com
*Counsel for Defendant Sarah Kellen*

Theodore J. Leopold, Esq.
Spencer T. Kuvin, Esq.
Leopold, Kuvin, P.A.
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL  33410
561-684-6500
Fax: 561-515-2610
skuvin@leopoldkuvin.com
*Counsel for Plaintiff in Related Case No. 08-08804*

Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400
West Palm Beach, FL 33401-5012
561-659-8300
Fax: 561-835-8691
jagesq@bellsouth.net
*Counsel for Defendant Jeffrey Epstein*

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  08-CV-80119-MARRA-JOHNSON

JANE DOE NO. 2,

                        Plaintiff,

v.

JEFFREY EPSTEIN,

                      Defendant.

_____/

Related Cases:
08-80232, 08-80380, 08-80381, 08-80994,
08-80993, 08-80811, 08-80893, 09-80469,
09-80581, 09-80656, 09-80802, 09-81092.

_____/

**AFFIDAVIT OF IGOR ZINOVIEV**

STATE OF FLORIDA         ) SS
COUNTY OF PALM BEACH  )

    BEFORE ME, the undersigned authority, personally appeared Igor Zinoviev having personal knowledge and being duly sworn, deposes and says:

1.    My name is Igor Zinoview.

2.    I began working for Mr. Epstein in November of 2005.

3.    I did not know him until I began working for him.

4.    I have never discussed nor has he ever attempted to discuss with me any facts or information relating to any legal matters in which he is involved.

5.    I work for Mr. Epstein as his driver, bodyguard and trainer.

EXHIBIT A

Page 2

FURTHER THE AFFIANT SAYETH NAUGHT.

_Igor Zb_
Igor Zinoviev

STATE OF FLORIDA
COUNTY OF PALM BEACH

I hereby Certify that on this day, before me, an officer duly authorized to administer oaths and take acknowledgments, personally appeared Igor Zinoviev  known to me to be the person described in and who executed the foregoing Affidavit, who acknowledged before me that he/she executed the same, that I relied upon the following form of identification of the above named person: _Igor Zinoviev_, and that an oath was/was not taken.

WITNESS my hand and official seal in the County and State last aforesaid this day of _Nov. 9_, 2009.

_Shy L Mahey_
PRINT NAME: _____ (SEAL)
NOTARY PUBLIC/STATE OF FLORIDA
COMMISSION NO.:
MY COMMISSION EXPIRES:

SHERYL L. MAHONEY
NOTARY
My Comm. Expires
May 28, 2010
No. DD519867
PUBLIC
STATE OF FLORIDA

IN THE COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT, IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO. 502008CA028051XXXXMB AB

L.M.,

       Plaintiff,

v.

JEFFREY EPSTEIN,

       Defendant.

_____/

## EPSTEIN'S MOTION FOR PROTECTIVE ORDER TO PROHIBIT INAPPROPRIATE DEPOSITION QUESTIONS

Defendant, JEFFREY EPSTEIN ("Epstein"), pursuant to Rule 1.280(c), Florida Rules of Civil Procedure, moves for a protective order to prohibit argumentative, harassing and inappropriate questions in depositions, and states:

1.    At numerous depositions, Plaintiff's counsel has repeatedly asked argumentative and harassing questions that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

2.    In particular, Plaintiff's counsel has asked questions that improperly sought to illicit lay opinions from fact witnesses, asked questions regarding witnesses' feelings towards Mr. Epstein and their beliefs regarding media reports of this case, asked whether they would leave their children with Mr. Epstein and asked whether they would go back to work for Mr. Epstein assuming the media reports were accurate, among other things.   These questions and the responses thereto will never be admissible.   They are argumentative, irrelevant and seek speculative answers and inadmissible lay opinions.

EXHIBIT  B

3.      For example, in the deposition of Larry Visoski, one of Mr. Epstein's pilots,

Plaintiff's counsel asked the following questions seeking to obtain Mr. Visoski's beliefs

and opinions on Plaintiff's allegations:

> Q.     All right.   When you read in the newspapers      the
> allegations that Mr. Epstein was involved with    numerous
> underage girls for sexual reasons, were you surprised?
>
> A.   I didn't believe it.
>
> Q.   Do you believe it today?
>
> A.   I don't believe it.
>
> Q.   You don't believe that Jeffrey Epstein was involved with
> underage girls in a sexual way?
>
> MR. CRITTON:  Form.
>
> THE WITNESS:  You're asking for my opinion, and I don't
> think my opinion is relevant in that matter.
>
> BY MR. EDWARDS:
>
> Q.   I think it's relevant.  Can you just tell me whether today
> you believe that Jeffrey Epstein has engaged in sex with
> underage girls?
>
> MR. CRITTON:  Form; speculation, irrelevant, always.
>
> THE WITNESS:  It's irrelevant.
>
> BY MR. EDWARDS:
>
> Q.   I need an answer.
>
> A.   I don't believe he had sex with underage women.
>
> Q.   Or engaged in any sexual acts with underage women?
>
> MR. CRITTON:  Form.

LM v. Epstein
Case No. 502008CA028051XXXXMBAB
Epstein's Motion for Protective Order to Prohibit Inappropriate Deposition Questions
Page 3 of 9

THE WITNESS:  No.

BY MR. EDWARDS:

Q.    You think that this is just a story that a bunch of underage women have made up?

A.    Speculation.

\* \* \* \*

Q.   Then we'll handle the question this way:  If you were to believe based on information and evidence that Mr. Epstein engaged in sex or some form of sex acts with people of the age range of 12, 13, 14, 15 years old, would you continue your employment with Mr. Epstein?

MR. CRITTON:  Form; speculation.

THE WITNESS:    I would certainly be speculating and I have to discuss it with my wife long and hard.  I don't think I could give you a correct and honest answer at this time.

See Excerpts of Deposition of Larry Visoski at 66-67; 181-82 (attached as composite **Exhibit A**).  Other examples of similar improper questions are included in Exhibit A.

4.    Not only do these questions seek improper lay opinions, Plaintiff's counsel asked Mr. Visoski his belief as to the truth of hearsay newspaper articles.   The foregoing questions are obviously irrelevant, argumentative and not reasonably calculated to lead to the discovery of admissible evidence.

5.    Moreover, whether Mr. Visoski would continue working for Mr. Epstein if Plaintiff's allegations are true has absolutely no relevance to any claim or defense in this case.  The questions are simply improper and meant to harass and embarrass the

LM v. Epstein
Case No. 502008CA028051XXXXMBAB
Epstein's Motion for Protective Order to Prohibit Inappropriate Deposition Questions
Page 4 of 9

witness.

6.     Mr. Visoski was questioned for over four hours and much of the time was

wasted on irrelevant and harassing questions.

7.     Plaintiff's counsel asked similar questions at the deposition of Larry

Eugene Morrison, another one of Mr. Epstein's pilots:

> Q.   Certainly you've read certain newspaper articles about the allegations, police reports, otherwise, the allegations that occurred or have been alleged to have occurred at his Palm Beach mansion, correct?
>
> A.   Uh-huh.
>
> Q.   Correct?
>
> A.   Correct.
>
> Q.   Given the nature of those allegations, would you leave your daughter of 17, 16, 15 years old with Mr. Epstein alone?
>
> MR. PIKE:  Form.  Move to strike.
>
> A.   Yes.
>
> * * * *
>
> Q.   And despite pleading guilty to procuring underage girls for the purposes of sex, you still feel comfortable leaving a 13, 14, 15-year-old girl around him?
>
> MR. PIKE:  Form.  Move to strike.
>
> A.   Yes.  I mean, with my daughter, yes.  I don't know how he behaves around anybody else.  I just know that the respect that he showed me, I feel safe with my daughter.
>
> Q.   And have you read in detail the reports as to what happened at his house with the girls?

I.M v. Epstein
Case No. 502008CA028051XXXXMBAB
Epstein's Motion for Protective Order to Prohibit Inappropriate Deposition Questions
Page 5 of 9

A.   Only --

MR. PIKE:  Form.

A.   -- what's been in the newspapers and published.

Q.   If you read and hear testimony given - well, I can tell you now - testimony has been given in this case that what happens is:  A 13 or 14 year old is led upstairs by herself, told to get naked, he lays down on his back, there is a brief massage before he turns over, exposes himself erect, masturbates while he tells this 13 or 14 year old to pinch his nipples as hard as she can while he inserts his fingers into their vagina and ejaculates all over them before saying, "Take your money and leave."

MR. PIKE:  Form.  Move to strike.

BY MR. EDWARDS:

Q.   Okay?  Then, "You can continue to come back for $200 every time or every girl you bring me within your age group and I get to do this again, I pay you $200 per person."  If that is the testimony --

MR. PIKE:  Form.

Q.   -- that what happens behind closed doors with him, do you still feel comfortable leaving a 13 or 14 year old in a room with Jeffrey Epstein?

MR. PIKE:  Form.

A.   If that, in fact, is what actually happened, no.

* * * *

Q.   [Would you] go back - considering what you've read and what you may or may not believe - would you go back to working for Jeffrey Epstein?

MR. PIKE:  Form.

A.   I can't say.  I still work for him on a maintenance - to

maintain the airplanes and stuff like that, so.

See Excerpts of Deposition of Larry Eugene Morrison at 135-36; 175-76; 184 (attached as composite **Exhibit B**).

8.      Again, whether Mr. Morrison would work for Mr. Epstein "considering what [he has] read and what [he] may or may not believe" (i.e. considering hearsay media accounts and inadmissible lay opinion) has no bearing on the instant case.

9.      In addition, questions regarding whether Mr. Morrison would leave his children alone with Mr. Epstein could have only been meant to harass and embarrass Mr. Morrison.  Nevertheless, Mr. Morrison testified that he would leave his children with Mr. Epstein.  As Plaintiff's counsel was obviously not happy with the answer to this question, he proceeded to press Mr. Morrison with inflammatory statements until he got the answer he wanted.

10.     Plaintiff's counsel has also asked the same improper line of questions in other witnesses' depositions.

11.     The above-cited questions exceed the bounds of permissible discovery; they have absolutely no relevance to this case.  Accordingly, the Court should enter a protective order prohibiting such questions and should sanction Plaintiff's counsel if such inappropriate questions are asked at future depositions.

12.     Regarding the scope of discovery, Judge Linnea Johnson noted in her October 28, 2009 Omnibus Order,[1] "[w]hile the scope of discovery is broad, it is not

---

[1] The Omnibus Order (DE #377) was entered in the federal companion case Jane Doe No. 2 v. Epstein, Case No. 08-CIV-80119 MARRA/JOHNSON in the U.S. District Court, Southern District of Florida.

without limits. <u>Washington v. Brown & Williamson Tobacco</u>, 959 F.2d 1566, 1570 (11th

Cir. 1992). ...   Courts have long held that '[w]hile the standard of relevancy [in

discovery] is a liberal one, it is not so liberal as to allow a party to roam in the shadow

zones of relevancy and to explore matter (sic) which does not presently appear

germane on the theory that it might conceivably become so.' <u>Food Lion, Inc. v. United</u>

<u>Food & Commercial Workers Intern. Union</u>, 103 F.3d 1007, 1012-13 (C.A. D.C. 1997)

(string cite omitted)." <u>See</u> also <u>Capco Properties, LLC v. Monterry Gardens of Pinecrest</u>

<u>Condo.</u>, 982 So. 2d 1211, (Fla. 3d DCA 2008) (holding that discovery in civil cases must

be relevant to the subject matter of the case and must be admissible or reasonably

calculated to lead to admissible evidence); <u>Morton Plant Hospital Ass'n, Inc. v.</u>

<u>Shahbas</u>, 960 So. 2d 820, 824 (Fla. 2d DCA 2007) (holding that "discovery should be

denied when it has been established that the information requested is neither relevant

to any pending claim or defense nor will it lead to the discovery of admissible evidence,"

citing <u>Tanchel v. Shoemaker</u>, 928 So. 2d 440, 442 (Fla. 5th DCA 2006)).

13.     As illustrated above, the questions are simply not germane to any pending

claim or defense nor will they lead to the discovery of admissible evidence.  Whether

Mr. Visoski believes or disbelieves the media accounts of this case, or whether Mr.

Morrison would leave his children with Mr. Epstein is not relevant and cannot

conceivably lead to the discovery of admissible evidence.

14.     The Court should curtail these inappropriate lines of questions and enter a

protective order prohibiting them.

15.     Rule 1.280(c), Florida Rules of Civil Procedure, provides the Court with

the power to "make any order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense that justice requires including ... (4) that certain matter not be inquired into, or that the scope of the discovery be limited to certain matters."

16.     Accordingly, Epstein requests the Court enter a protective order prohibiting Plaintiff's counsel from asking witnesses' questions regarding opinions and beliefs regarding media articles and the allegations in this case and whether they would leave their children with Epstein or questions of a similar nature, and limiting the scope to the witnesses personal knowledge regarding matters relevant to the claims and defenses in this case.  See Shahbas, 960 So. 2d at 824.

WHEREFORE, Defendant, JEFFREY EPSTEIN, respectfully requests the Court enter a protective order prohibiting Plaintiff's counsel from asking witnesses' questions regarding opinions and beliefs regarding media articles and the allegations in this case and whether they would leave their children with Epstein or questions of a similar nature, and limiting the scope to the witnesses personal knowledge regarding matters relevant to the claims and defenses in this case and grant any additional relief the Court deems just and proper.

### Certificate of Service

I HEREBY CERTIFY that a true copy of the foregoing was sent by fax and U.S. Mail to the following addressees on this 3rd day of November, 2009:

Brad Edwards, Esq.
Rothstein Rosenfeldt Adler
401 East Las Olas Boulevard
Suite 1650

Jack Alan Goldberger, Esq.
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue South
Suite 1400

LM v. Epstein
Case No. 502008CA028051XXXXMBAB
Epstein's Motion for Protective Order to Prohibit Inappropriate Deposition Questions
Page 9 of 9

Fort Lauderdale, FL 33301
954-522-3456 Phone
954-527-8663 Fax
*Counsel for Plaintiff*

Jay Howell, Esq.
Jay Howell & Associates, P.A.
644 Cesery Boulevard
Suite 250
Jacksonville, FL 32211
904-680-1234 Phone
904-680-1238 Fax
*Co-counsel for Plaintiff*

West Palm Beach, FL 33401-5012
Fax: 561-835-8691
*Co-Counsel for Defendant Jeffrey Epstein*

**BURMAN, CRITTON, LUTTIER & COLEMAN, LLP**
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
(561) 842-2820
(561) 844-6929 Fax

By: _____
Robert D. Critton, Jr.
Florida Bar #224162
Michael J. Pike
Florida Bar #617296
*(Counsel for Defendant Jeffrey Epstein)*

Larry Visoski                                      October 15, 2009

---

**Page 3**

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA
CASE NO. 502008CA028051XXXXMB AD

L.M.,

     Plaintiff,

-vs-

JEFFREY EPSTEIN,

     Defendant.

DEPOSITION OF LARRY VISOSKI

Thursday, October 15, 2009
10:18 - 3:37 p.m.

515 N. Flagler Drive
Suite F200
West Palm Beach, Florida 33401

Reported By:
Wendy Beath Anderson, RPR, CRR, FPR
Notary Public, State of Florida
Esquire Deposition Services
West Palm Beach Office   Job #127542

     - - -

I N D E X

WITNESS:   DIRECT  CROSS  REDIRECT  RECROSS

LARRY VISOSKI

BY MR. EDWARDS:   6
BY MR. CRITTON:        214
BY MR. EDWARDS:              220
BY MR. CRITTON:                  221

     - - -

E X H I B I T S

     - - -

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| PLAINTIFF'S EX. 1 | FLIGHT LOG BOOK | |
| | (MARKED IN PREVIOUS DEPO) | |
| PLAINTIFF'S EX. 2 | MESSAGE PAD | 119 |
| PLAINTIFF'S EX. 3 | MESSAGE PAD | 119 |
| PLAINTIFF'S EX. 4 | COMPLAINT | 139 |
| PLAINTIFF'S EX. 5 | INMATE VISITOR LOG | 161 |

---

**Page 2**

APPEARANCES:
On behalf of the Plaintiff:
   BRADLEY J. EDWARDS, ESQUIRE
   ROTHSTEIN, ROSENFELDT, ADLER
   401 East Las Olas Boulevard
   Suite 1650
   Fort Lauderdale, Florida 33394

On behalf of the Defendant:
   ROBERT D. CRITTON, JR., ESQUIRE
   BURMAN, CRITTON & LUTTIER
   303 Banyan Boulevard, Suite 400
   West Palm Beach, Florida 33401

On behalf of the Witness:
   BRUCE REINHART, ESQUIRE
   250 South Australian Avenue
   Suite 1400
   West Palm Beach, Florida 33401

ALSO PRESENT:
   CARA L. HOLMES, ESQUIRE
   1220 N.W. 157th Avenue
   Pembroke Pines, Florida 33028
   ADAM D. HOROWITZ, ESQUIRE
   MERMELSTEIN & HOROWITZ, P.A.
   18205 Biscayne Boulevard, Suite 2218
   Miami, Florida 33160

   RICHARD H. WILLITS, ESQUIRE (VIA TELEPHONE)
   RICHARD H. WILLITS, P.A.
   2290 10th Avenue North, Suite 404
   Lake Worth, Florida 33461

---

**Page 4**

P R O C E E D I N G S

     - - -

   Deposition taken before Wendy Beath Anderson,
Certified Realtime Reporter and Notary Public in and for
the State of Florida at Large, in the above cause.

     - - -

   MR. EDWARDS:  We're going to put something on
the record about -- well, we'll do it this way --

   MR. REINHART:  Do it at the end, after we get
him -- whatever you want.  It's your show.

   MR. EDWARDS:  Okay.  There were -- I don't
even think Mr. Willits is aware of this.  There was
a subpoena duces tecum for this witness, as well as
the previous witness, which was another pilot, Dave
Rogers, and that duces tecum was to bring the
flight logs related from 1998 through 2005.  What
was produced at the previous deposition were flight
logs from 2002 through 2005, and now Mr. Reinhart
has agreed to produce the remainder of the flight
logs requested, those going from 1998 through 2002.

   MR. REINHART:  Correct.  They're pilot logs,
not flight logs.  There are other records we
indicated are corporate records, and with those you
have to deal with Mr. Critton.

   MR. CRITTON:  However, with the proviso, too,



October 15, 2009

67

women?

MR. CRITTON: Form.

THE WITNESS: No.

BY MR. EDWARDS:

Q. You think that this is just a story that a bunch of underage women have made up?

A. Speculation.

MR. CRITTON: Objection. Now it's argumentative. Who gives a darn what he thinks one way or another? If he has personal knowledge --

MR. EDWARDS: You're objecting to the form?

MR. CRITTON: It's argumentative.

MR. EDWARDS: You're objecting to the form?

MR. CRITTON: Yes.

MR. EDWARDS: Okay.

BY MR. EDWARDS:

Q. Is that something that you believe that a bunch of women -- some of which know each other, some don't, some of which have been on the airplane and some which haven't -- made this up, that Jeffrey Epstein engaged in some sexual conduct with them?

MR. CRITTON: Form.

THE WITNESS: What I believe doesn't matter in this case, does it?

66

1  Q. All right. When you read in the newspapers
2  the allegations that Mr. Epstein was involved with
3  numerous underage girls for sexual reasons, were you
4  surprised?
5  A. I didn't believe it.
6  Q. Do you believe it today?
7  A. I don't believe it.
8  Q. You don't believe that Jeffrey Epstein was
9  involved with underage girls in a sexual way?
10  MR. CRITTON: Form.
11  THE WITNESS: You're asking for my opinion,
12  and I don't think my opinion is relevant in that
13  matter.
14  BY MR. EDWARDS:
15  Q. I think it's relevant. Can you just tell me
16  whether today you believe that Jeffrey Epstein has
17  engaged in sex with underage girls?
18  MR. CRITTON: Form; speculation, irrelevant,
19  always.
20  THE WITNESS: It's irrelevant.
21  BY MR. EDWARDS:
22  Q. I need an answer.
23  A. I don't believe he had sex with underage
24  women.
25  Q. Or engaged in any sexual acts with underage

68

1  BY MR. EDWARDS:
2  Q. I need an answer. Do you believe it? Do you
3  believe these girls made this up?
4  MR. CRITTON: Form.
5  MR. REINHART: I'm going to instruct him not
6  to answer. Move on.
7  MR. EDWARDS: Is there a privilege that we're
8  asserting?
9  MR. REINHART: No, it's irrelevant. It's
10  harassment and not likely to lead to discoverable
11  evidence.
12  MR. EDWARDS: I'm going to put on the record
13  right now that it is -- we are allowed discovery
14  into a RICO count. We are also allowed discovery
15  into the intent of Mr. Epstein in developing a
16  criminal enterprise designed to sexually exploit
17  and sexually abuse underage girls. We believe that
18  in doing so, he associated intentionally with
19  people of similar beliefs that sex with underage
20  girls is okay, and that there have been many
21  discussions with this witness, as well as many
22  other witnesses with -- to insure his protection
23  from law enforcement that they not answer these
24  specific questions. And thus, the opinions and
25  beliefs of all of these witnesses that we are

Larry Visoski                                          October 15, 2009

## 69

1    alleging associated with this criminal enterprise
2    are certainly reasonably calculated to lead to the
3    discovery of admissible evidence.  And if you're
4    still instructing the witness, based on that
5    proffer, not to answer any of these questions, I'm
6    going to continue to ask the questions and you can
7    instruct him not to answer and we can go to the
8    Court.
9         MR. REINHART:  My response is to his opinion
10   whether people making allegations in this case are
11   colluding or making up a story is irrelevant to
12   what you just said.  So I am going to instruct him
13   not to answer any question that goes to his opinion
14   of someone else's motivation or the truth of facts
15   to which he has no knowledge.
16        So yes, I'm instructing him not to answer.
17        MR. CRITTON:  Let me add in my part, is that I
18   think -- you're certainly not only capable to ask
19   questions with regard to what his personal
20   knowledge is, and if he knows something or he has
21   reasonable basis for it; certainly you are entitled
22   to that information.  I think you've asked those
23   questions and he's given you straightforward
24   answers as to what he knew or what he didn't know
25   under those circumstances.  And as to what his

## 70

1    thoughts are on something which he has no factual
2    basis or even an assumption to know one way or
3    another is irrelevant.  That's ultimately for a
4    fact-finder in this case.
5         While it's interesting, it's argumentative and
6    I don't think he's -- I mean, do it on a
7    question-by-question basis.  If he has knowledge,
8    that's great, but to argue your case with this
9    witness or any other witness doesn't serve a
10   purpose and I think is, you know -- I think it's
11   not a good use of our time, I'll put it that way.
12        But you know, you can go ahead and ask.
13        MR. EDWARDS:  I can ask the question and if
14   the witness is being instructed not to answer,
15   we'll let a judge decide whether he needs to answer
16   the question and whether it's discoverable or not.
17        MR. REINHART:  Absolutely.  Make your record.
18   BY MR. EDWARDS:
19        Q.  Do you have any reason to believe that Jeffrey
20   Epstein engaged in sexual activity with underage women?
21        A.  I have no reason to believe.
22        Q.  Okay.  So as you sit here today, based on your
23   18 years of knowledge, experience and observation of
24   Jeffrey Epstein, is it your belief that he has not had
25   sex or engaged in sexual activity with underage women?

## 71

1         A.  It's an opinion, and I believe that he has
2    not.
3         Q.  Okay.  Isn't it true that at some point in
4    time you learned that Jeffrey Epstein has -- strike
5    that.
6         MR. CRITTON:  When you ultimately get to a
7    good place to break, will you let us know?
8         MR. EDWARDS:  Let's break now.
9         (A break was had at 11:28 a.m.)
10   BY MR. EDWARDS:
11        Q.  All right.  Eighteen years of being a pilot
12   for Jeffrey Epstein and in terms of being able to name
13   somebody that you would say you've observed with Jeffrey
14   Epstein and would classify that person as Jeffrey
15   Epstein's friend, can you name anybody?
16        A.  Nadia, Sarah; just people that we see
17   routinely on the airplane.
18        Q.  That's people you see routinely in the last
19   five to ten years, right?
20        A.  Yes.
21        Q.  Prior to that time, anybody that you've
22   noticed as Jeffrey Epstein's friend may be Ghislaine
23   Maxwell?
24        A.  What time frame?
25        Q.  Is that a person that at some point in time

## 72

1    you would classify as Jeffrey Epstein's friend?
2         A.  I would classify it.  I don't know if it's
3    true.
4         Q.  But that's only because they were on the
5    airplane together?
6         A.  Yes.
7         Q.  Do you know what Jeffrey Epstein does for a
8    living in your 18 years of observing and talking with
9    Jeffrey Epstein?
10        A.  No.
11        Q.  No idea?
12        A.  No.
13        Q.  Ever asked him?
14        A.  No, actually.
15        Q.  Ever been curious?
16        A.  Sure.
17        Q.  Ever done anything to satisfy that curiosity?
18        A.  If you mean Google it, not really, actually.
19   I mean, I really have not.
20        Q.  Okay.  So in 18 years of traveling and being
21   the pilot and driving -- and taking this person, Jeffrey
22   Epstein, from one property in New York to New Mexico and
23   Florida and around the world, you have no idea what he
24   does in terms of how he makes money?
25        A.  No, sir.

...... you are aware of other personal or

156

1

2

3

4          MR. CRITTON: Form.

5          THE WITNESS: No.

6     BY MR. EDWARDS:

7          Q.  If you had been aware that Mr. Epstein was --

8     and by this -- this is more in the form of a

9     hypothetical, and that I'm not going to suggest to you

10    it's a fact that he was.  But if you had been aware that

11    every single day Jeffrey Epstein's goal was to locate

12    underage girls for the purposes of sex, and either have

13    sex with them on the airplane or at some other

14    designation that you were destination that you were

15    traveling him to, would you have continued to pilot

16    those planes?

17         MR. CRITTON: Form.

18         THE WITNESS: You said it was hypothetical?

19    BY MR. EDWARDS:

20         Q.  Right, it is a hypothetical.

21         A.  Why would I want to answer that?  Because

22    you're being hypothetical.  I mean, it would obviously

23    be wrong.

24         Q.  Sure.  Well, a hypothetical question is a

25    legal question that I'm allowed to ask.

Larry Visoski

157

1    A.  Okay.
2    Q.  And I'm just asking you if you did have
3  knowledge that Jeffrey Epstein was having sex with
4  little girls either on the plane or at a place that you
5  were taking him to or from on a daily basis, that's what
6  he did, would you have continued to be his pilot?
7        MR. CRITTON:  Let me object.  Object to the
8    form.  It's argumentative.  It has no more value
9    than assuming he was chopping up bodies or anybody
10   was chopping up bodies in the plane you're flying.
11   What difference does it make?  Form.
12       MR. EDWARDS:  What difference does it make in
13   a case about him having sex with little girls?  I'm
14   not going to argue with you about it.  You've
15   stated your objection.
16       MR. CRITTON:  Exactly.  It's an argumentative
17   question.
18       MR. EDWARDS:  I'm not going to argue with you
19   about it.
20       MR. CRITTON:  You're arguing with him about
21   now.
22       MR. EDWARDS:  No, I'm asking him the
23   hypothetical.
24  BY MR. EDWARDS:
25   Q.  Can you answer that?  Would you have continued

158

1  to be a pilot for somebody who's traveling to and from
2  destinations with the goal of having sex with underage
3  girls?
4        MR. CRITTON:  Form.
5        THE WITNESS:  It could be any person.  It
6    doesn't have to be Jeffrey Epstein, then, right?
7  BY MR. EDWARDS:
8    Q.  True.
9    A.  No, I wouldn't pilot an airplane if there was
10  wrongdoing going on.
11   Q.  That you knew about?
12   A.  That I knew you about, sure.
13   Q.  Me reading this complaint to you, is this the
14  first time you've heard these allegations --
15   A.  Yes.
16   Q.  -- against Mr. Epstein?
17   A.  Yes.

Larry Visoski

181

1    which he pled guilty to --
2         MR. CRITTON: Form.
3         MR. REINHART: Can we -- for purposes of your
4    hypothetical, what facts do you want him to assume
5    are true? You said the facts to which he pled
6    guilty, but the witness already said he doesn't
7    know what he pled guilty to. He knows the charge
8    he doesn't know the facts.
9    BY MR. EDWARDS:
10       Q.  Solicitation of prostitution of a minor,
11   somebody under the age of 18.
12       MR. EDWARDS: That's the charge, right,
13   solicitation of prostitution of a minor?
14       MR. CRITTON: No. I think you've got it
15   wrong. I'll object to the form.
16       MR. EDWARDS: Okay.
17   BY MR. EDWARDS:
18       Q.  Then we'll handle the question this way: If
19   you were to believe based on information and evidence
20   that Mr. Epstein engaged in sex or some form of sex act
21   with people of the age range of 12, 13, 14, 15 years
22   old, would you continue your employment with
23   Mr. Epstein?
24       MR. CRITTON: Form; speculation.
25       THE WITNESS: I would certainly be speculating

182

1        and I have to discuss it with my wife long and
2        hard. I don't think I could give you a correct and
3        honest answer at this time.
4    BY MR. EDWARDS:
5        Q.  Okay. Given the allegations that have been
6    made in this case, is this something that you have
7    discussed with anyone other than your attorney?
8        A.  No, not really. Only from the fact that
9    they're allegations and there's still a lot more work,
10   I'm sure, to be discovered.
11       MR. CRITTON: Let me put on there, for the --
12   If this deposition is not typed -- and we request
13   it -- I'd like at least this portion where
14   Mr. Edwards' last question back about five pages
15   worth, so just if you could mark it from this
16   page back about five pages.
17       If nobody requests the deposition, I'd just
18   like those five pages.
19       MR. EDWARDS: I'm going to request the
20   deposition, so...
21       MR. CRITTON: Okay. We'll mark this then, so
22   you could tell me where it is, approximately.
23   BY MR. EDWARDS:
24       Q.  Is there a reason why you have not discussed
25   with Jeffrey Epstein the allegations that have been ma

Larry Eugene Morrison - Volume I                                October 6, 2009

---

**1**

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN
AND FOR PALM BEACH COUNTY, FLORIDA

VOLUME I     Pages 1 to 200

L.M.,                        )
                             )
          Plaintiff,         )
                             )
vs.                          )Case No. 502008CA028051
                             )XXXXMB AD
JEFFREY EPSTEIN,             )
                             )
          Defendant.         )
_____X

DEPOSITION OF
LARRY EUGENE MORRISON
TAKEN ON BEHALF OF THE PLAINTIFF
October 6, 2009
10:55 a.m. - 2:20 p.m.

515 N. Flagler Drive
West Palm Beach, FL 33401-4321

Jennifer DiLorenzo, court reporter

---

**2**

APPEARANCES OF COUNSEL

On behalf of the Plaintiff L.M.:
ROTHSTEIN, ROSENFELDT & ADLER
BY: BRADLEY J. EDWARDS, ESQ.
and MICHAEL WHEELER, ESQ.,
401 East Las Olas Boulevard
Suite 1650
Fort Lauderdale, FL 33394
954-522-3456
bedwards@rra-law.com
mwheeler@rra-law.com

On behalf of Plaintiffs Jane Doe 2 through 8:

MERMELSTEIN & HOROWITZ, P.A.
BY: JESSICA D. ARBOUR, ATTORNEY-AT-LAW,
18205 Biscayne Boulevard
Suite 2218
Miami, FL 33160
305-931-2200
jarbour@sexabuseattorney.com

On behalf of Plaintiffs Jane Doe 101 and 102 by
telephone:

PODHURST ORSECK, P.A.
BY: KATHERINE W. EZELL, ATTORNEY-AT-LAW,
25 W. Flagler Street
Miami, FL 33130
305-358-2800
kezell@podhurst.com

On behalf of the Plaintiff C.M.A. by telephone:

LAW OFFICE OF RICHARD WILLITS, P.A.
BY: RICHARD WILLITS, ESQ.,
2290 10th Avenue N.
Suite 404
Lake Worth, FL 33461
561-582-7600
lawyerwillits@aol.com

---

**3**

APPEARANCE OF COUNSEL

On behalf of the Defendant:
ATTERBURY, GOLDBERGER & WEISS
BY: JACK ALAN GOLDBERGER, ESQ.,
250 Australian Avenue
Suite 1400
West Palm Beach, FL 33401
561-659-8300
jgoldberger@agwpa.com

On behalf of the Defendant by telephone:

BURMAN, CRITTON, LUTTIER & COLEMAN
BY: MICHAEL J. PIKE, ESQ.,
515 N. Flagler Drive
Suite 400
West Palm Beach, FL 33401
561-842-2820
mpike@bclclaw.com

On behalf of the witness:

LAW OFFICE OF BRUCE E. REINHART
BY: BRUCE E. REINHART, ESQ.,
One Clearlake Center
250 S. Australian Avenue
Suite 1400
West Palm Beach, FL 33401
561-202-6360
BReinhart@BruceREinhartLaw.com

---

**4**

INDEX OF EXAMINATION

WITNESS:
LARRY EUGENE MORRISON
                                            Page
DIRECT EXAMINATION
By Mr. Edwards                               #5

CROSS-EXAMINATION
By Ms. Ezell                                 #190
CROSS-EXAMINATION
By Mr. Willits                               #195

CROSS-EXAMINATION
By Mr. Pike                                  #196
FURTHER REDIRECT EXAMINATION
By Mr. Edwards                               #199

- - -

INDEX TO EXHIBITS

Plaintiff's
Exhibit   Description                        Page
1     Twenty-four pages of "JEGE, Inc.,
      Passenger Manifest."                   #138

(Plaintiff's Composite 1 was attached to the
original transcript and copies of the transcript.)

---



DEFENDANT'S
EXHIBIT
B

October 6, 2009

135

1    A.   I have no idea. I don't know.
2    Q.   When you say that Nadia Marcinkova was just
3    coming in the picture, what's your understanding as to
4    who Nadia Marcinkova is relative to Mr. Epstein?
5    A.    I don't know. I don't understand. I
6    don't know. I didn't know if maybe she was like an
7    exchange -- Jeffrey always appeared to be very
8    involved in education and philanthropy. I didn't
9    know if she was an exchange-type student or something
10   or what. I don't know.
11   Q.   When you say he appeared to be "involved in,"
12   what do you mean?
13   A.   Educational things, foundations, science
14   foundations, and things.
15   Q.   Speaking of - the Florida Science Foundation
16   is a place where, when he was on work release, he spent a
17   lot of time there, you're aware of that?
18   A.   That's what I've heard, yeah.
19   Q.   What does that place do?
20   A.   I have no idea.
21   Q.   Does it do anything?
22   A.   I don't know. I don't know anything about
23   it.
24   Q.   Certainly you've read certain newspaper
25   articles about the allegations, police reports,

136

1    otherwise, the allegations that occurred or have been
2    alleged to have occurred at his Palm Beach mansion,
3    correct?
4    A.   Uh-huh.
5    Q.   Correct?
6    A.   Correct.
7    Q.   Given the nature of those allegations, would
8    you leave your daughter of 17, 16, 15 years old with Mr.
9    Epstein alone?
10        MR. PIKE:  Form. Move to strike.
11   A.   Yes.
12   Q.   You would?
13   A.   (Witness nods head.)
14   Q.   And why?
15   A.   Because I don't fear that he would try
16   anything with my daughter. He showed -- When I
17   worked for him he showed me respect. He never --
18   never -- He never showed me disrespect. He would ask
19   how the family is. I mean, not on a personal level,
20   but an employer/employee.
21   Q.   Right. Okay.
22   A.   He never showed me any reason not to trust
23   him.
24   Q.   But you're not a 13-year old girl, so.
25   A.   No, but, like I say, he never showed me

October 6, 2009

175

1     Q.   And despite pleading guilty to procuring
2  underage girls for the purposes of sex, you still feel
3  comfortable leaving a 13, 14, 15-year-old girl around
4  him?
5     MR. PIKE: Form. Move to strike.
6     A.   Yes. I mean, with my daughter, yes. I
7  don't know how he behaves around anybody else. I
8  just know that the respect that he showed me, I feel
9  safe with my daughter.
10     Q.   And have you read in detail the reports as to
11  what happened at his house with the girls?
12     A.   Only —
13     MR. PIKE: Form.
14     A.   — what's been in the newspapers and
15  published.
16     Q.   If you read and hear testimony given – well, I
17  can tell you now – testimony has been given in this case
18  that what happens is: A 13 or 14 year old is led
19  upstairs by herself, told to get naked, he lays down on
20  his back, there is a brief massage before he turns over,
21  exposes himself erect, masturbates while he tells this 13
22  or 14 year old to pinch his nipples as hard as she can
23  while he inserts his fingers into their vagina and
24  ejaculates all over them before saying, "Take your money
25  and leave."

176

1     MR. PIKE: Form. Move to strike.
2  BY MR. EDWARDS:
3     Q.   Okay? Then, "You can continue to come back
4  for $200 every time or every girl you bring me within
5  your age group and I get to do this again, I pay you $200
6  per person." If that is the testimony —
7     MR. PIKE: Form.
8     Q.   — that what happens behind closed doors with
9  him, do you still feel comfortable leaving a 13 or 14
10  year old in a room with Jeffrey Epstein?
11     MR. PIKE: Form.
12     A.   If that, in fact, is what actually
13  happened, no.

184

1    you witnessed Jeffrey Epstein committing?
2       A.   No.
3       Q.   Would you --
4       A.   No.
5       Q.   -- go back - considering what you've read and
6    what you may or may not believe - would you go back to
7    working for Jeffrey Epstein?
8          MR. PIKE:  Form.
9       A.   I can't say.  I still work for him on a
10   maintenance - to maintain the airplanes and stuff
11   like that, so.
12      Q.   You're on his payroll?
13      A.   Salaried, yes.
14      Q.   Do you know who else is on his payroll?
15      A.   Well, Dave and Larry.
16      Q.   Certainly, if I want to know more about his
17   private life - do you know who's at his house?
18      A.   No.
19      Q.   Do you know who his housekeeper is?
20      A.   No.
21      Q.   Do you know who his architect is?
22      A.   No, no.
23      Q.   Does Larry visit him at his house?
24      A.   I would assume so.
25      Q.   Why do you say you would assume so? ·That